CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

CHARLES F. BISESTO (CABN 271353)
BENJAMIN J. WOLINSKY (CABN 305410)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6405
    FAX: (415) 436-7234
    Charles.Bisesto@usdoj.gov
    Benjamin.Wolinsky@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 23-239-001 HSG |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | Date: March 4, 2026 |
| JAVIER MARIN-GONZALES, | Time: 2:00 p.m. |
| Defendant. | The Honorable Haywood S. Gilliam Jr. |

## I.    INTRODUCTION

The United States respectfully submits this sentencing memorandum regarding defendant Javier Marin-Gonzales, who pleaded guilty to Count One of the Indictment charging Distribution of 40 Grams and More of a Mixture and Substance Containing a Detectable Amount of Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi).

The parties and U.S. Probation agree on the applicable Guidelines calculations and that the statutory mandatory minimum sentence of 60 months applies. The United States therefore requests that the Court impose a sentence of 60 months' imprisonment, followed by the mandatory minimum term of

UNITED STATES' SENTENCING MEMO.    1
CR 23-239 HSG

four years of supervised release, along with the standard and special conditions recommended by Probation, and the mandatory $100 special assessment.

Although the requested term is the minimum permitted by statute, a 60-month sentence is necessary and appropriate under 18 U.S.C. § 3553(a) because defendant repeatedly distributed extraordinarily dangerous narcotics, including hundreds of grams of fentanyl, in multiple controlled sales over several months. (PSR ¶¶ 11–15.) The seriousness of that conduct is underscored by the fact that defendant was ultimately apprehended in Honduras and extradited to the United States to face sentencing in this Court. (PSR ¶¶ 5, 17.)

## II.     FACTS

### A.     The offense conduct

In July 2022, agents received information from a confidential informant about a Honduran fentanyl dealer known as "Javi," later identified as Javier Marin-Gonzales ("the defendant"), who was distributing narcotics in Oakland and San Francisco. (PSR ¶ 9.) Investigators corroborated the defendant's identity through database checks and a booking photograph that the informant positively identified. (PSR ¶ 10.)

On August 25, 2022, agents equipped a confidential source with recording devices and provided funds for a controlled purchase. The source called the defendant, confirmed the quantity and price (four ounces for $1,800), and arranged to meet at Ben's Burgers in Oakland. (PSR ¶ 11.) The defendant arrived, accepted $1,800, and provided a bag containing fentanyl. Laboratory analysis confirmed fentanyl with a net weight of 111.8 grams. (PSR ¶ 12.)

On September 20, 2022, agents conducted a second controlled purchase at the same location. On this occasion, the defendant sold fentanyl with a net weight of 214.3 grams for $3,200. (PSR ¶ 13.)

On November 22, 2022, agents arranged a third transaction at an Arco gas station in Oakland. The defendant agreed to sell eight ounces for $3,200. After the initial transaction, the source requested more, and defendant arranged for an associate to provide additional fentanyl. The transaction resulted in a total of 364 grams of fentanyl sold for an additional $1,500. (PSR ¶ 14.)

During the investigation, agents also obtained cell-site and location data for the defendant's

UNITED STATES' SENTENCING MEMO.          2
CR 23-239 HSG

phone line pursuant to warrants issued between September 2022 and January 2023. (PSR ¶ 18.) That data showed the defendant repeatedly traveling to the Tenderloin neighborhood in San Francisco during nighttime hours, behavior consistent with drug-distribution activity. (PSR ¶ 18.) The data further reflected that in January 2023 the defendant traveled to Portland and began residing in that area. (PSR ¶ 18.) In addition, late in the evening on October 25, 2022, the defendant sold approximately 4.5 grams of fentanyl to an undercover San Francisco Police Department officer in an FBI-arranged controlled purchase in the area of 7th Street and Stevenson Alley, within the Tenderloin District of San Francisco. (PSR ¶ 19.) The defendant was not arrested at that time to avoid compromising the broader investigation. (PSR ¶ 19.)

For purposes of addressing his culpability in this case, the defendant agreed he is responsible for 690.4 grams of fentanyl sold across the three controlled buys. (PSR ¶ 15.)

**B.      Flight, apprehension, and extradition from Honduras**

During their investigation, agents learned the defendant had fled back to Honduras. (PSR ¶ 16.) Through international coordination, Honduran authorities located and apprehended the defendant on September 7, 2024, and he was extradited to the United States on October 23, 2024. (PSR ¶¶ 5, 17.) The defendant has been in continuous federal custody since detention was ordered on October 30, 2024. (PSR ¶ 5.)

**III.    SENTENCING GUIDELINES CALCULATIONS**

The parties agreed to the Guidelines calculations in the plea agreement, and Probation concurs. (PSR ¶ 4.) The base offense level is 30 because the offense involved at least 400 grams but less than 1.2 kilograms of fentanyl. (PSR ¶ 24.) The defendant receives a two-level reduction as a zero-point offender. (PSR ¶ 30.) He also receives a three-level reduction for acceptance of responsibility. (PSR ¶¶ 31–32.) The resulting total offense level is 25. (PSR ¶ 33.) The defendant is in Criminal History Category I with zero criminal history points. (PSR ¶¶ 37–38.)

With an adjusted offense level of 25, and a Criminal History Category I, the advisory Guidelines range is 57 to 71 months. Nevertheless, the statutory mandatory minimum raises the bottom of the range to 60 months, making the effective range 60 to 71 months. (PSR ¶ 59.) Because the range falls in

Zone D of the Sentencing Guidelines, the minimum term must be satisfied by a sentence of imprisonment.  (PSR ¶ 59.)

## IV.        SENTENCING RECOMMENDATION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant.  18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  Section 3553 sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a); *Carty,* 520 F.3d at 991.  The Guidelines should be the starting point and the initial benchmark.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  Though the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives."  *Rita v. United States,* 551 U.S. 338, 350 (2007).

### A.        18 U.S.C. § 3553(a) evaluation

A 60-month sentence is required by statute and is appropriate under 18 U.S.C. § 3553(a).  The defendant repeatedly distributed fentanyl in controlled transactions totaling 690.4 grams—approximately 1.5 pounds.  (PSR ¶ 15.)  The transactions were arranged by phone and executed through in-person exchanges, including ounce-level quantities that culminated in a 364-gram sale of fentanyl.  (PSR ¶¶ 11–14.)  This conduct reflects serious trafficking involving significant quantities of a lethal controlled substance and supports a substantial custodial sentence.  (PSR ¶¶ 11–15.)

The broader evidence in the PSR further supports that the defendant's conduct was consistent with an experienced distributor, not a one-time or low-level participant.  Investigators obtained cell-site and location data showing the defendant repeatedly traveling to the Tenderloin during nighttime hours, behavior consistent with drug-distribution activity.  (PSR ¶ 18.)  Separately, in October 2022, the defendant sold fentanyl to an undercover San Francisco Police officer in the Tenderloin in an FBI-

arranged controlled purchase.  (PSR ¶ 19.)  Considered together with the charged controlled buys, this evidence supports that defendant was operating as a professional drug dealer with access to supply and a willingness to repeatedly distribute fentanyl across locations and over time.  (PSR ¶¶ 11–15, 18–19.) The seriousness of the offense conduct is also underscored by the fact that defendant was ultimately apprehended in Honduras and extradited to the United States to face sentencing in this Court.  (PSR ¶¶ 5, 17.)

Without question, the defendant's personal history and characteristics present several mitigating considerations.  He has no adult criminal convictions and is properly in Criminal History Category I. (PSR ¶¶ 36–38.)  He accepted responsibility, pleaded guilty, and expressed remorse, including acknowledging that he committed the offense "out of necessity" and that there is "no justification." (PSR ¶ 22.)  The PSR also describes difficult circumstances in Honduras, including the loss of his father at a young age, his early assumption of responsibility for supporting his family, his limited education, and his stated motivation to earn money for his mother's medical needs.  (PSR ¶¶ 44–46, 53.)  The government's request for the lowest sentence permitted by statute, and the Guidelines reductions reflected in the total offense level, appropriately take these mitigating factors into account.  (PSR ¶¶ 30–33, 58–59.)

Those considerations, however, do not diminish the gravity of repeated, large scale fentanyl distribution reflected in the charged conduct and corroborated by additional investigative evidence summarized in the PSR.  In light of the nature and circumstances of the offense and the need for the sentence to reflect the seriousness of the conduct, promote respect for the law, afford deterrence, and protect the public, a 60-month sentence is sufficient, but not greater than necessary.

**B.  Recommended Sentence**

Accordingly, the United States respectfully recommends that the Court impose the following sentence: (1) 60 months' imprisonment on Count One, which is the mandatory minimum and the bottom of the effective Guidelines range, (PSR ¶¶ 58–59); (2) four years of supervised release, which is the mandatory minimum term, with the standard and special conditions recommended by Probation, (PSR ¶¶ 60–61); (3) the mandatory $100 special assessment, (PSR ¶ 65); and (4) no fine, consistent with

Probation's assessment that the defendant lacks the ability to pay.  (PSR ¶¶ 55–56, 66–67.)

**V.      CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of 60 months' imprisonment, followed by four years of supervised release, and the mandatory $100 special assessment.

DATED: February 25, 2026                              Respectfully submitted,

                                                      CRAIG H. MISSAKIAN
                                                      Attorney for the United States


                                                      _____/s/_____
                                                      CHARLES F. BISESTO
                                                      BENJAMIN J. WOLINSKY
                                                      Assistant United States Attorneys

UNITED STATES' SENTENCING MEMO.          6
CR 23-239 HSG